AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means    ☑ Original    ☐ Duplicate



CLERK'S OFFICE
A TRUE COPY
May 10, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
records and information associated with the cellular telephone assigned phone number 312-964-0343 ("Target Account 1") that are stored at premises controlled by AT&T ("the Provider"), headquartered at North Palm Beach, Florida. )

Case No. 24-M-405 (SCD)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Eastern    District of    Wisconsin   
*(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    5-24-24    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Stephen C. Dries   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    5-10-24. 10:05 am    
*Judge's signature*

City and state:    Milwaukee, WI        Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name(s) of any person(s) seized: |
|---|
| |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned phone number 312-964-0343 ("Target Account 1") that are stored at premises controlled by AT&T ("the Provider"), headquartered at North Palm Beach, Florida.

## ATTACHMENT B

## Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the time period **December 1st, 2021, through March 1st, 2022:**

    a. The following subscriber and extended subscriber information about the customers or subscribers of the Accounts:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

   ii. information regarding the cell towers and sectors through which the communications were sent and received; and

   iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1951(a) and 924(c), involving known and unknown persons during the period **December 1st, 2021, through March 1st, 2022.**

CLERK'S OFFICE
A TRUE COPY
May 10, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

records and information associated with the cellular telephone assigned phone number 312-964-0343 ("Target Account 1") that are stored at premises controlled by AT&T ("the Provider"), headquartered at North Palm Beach, Florida.

Case No. 24-M-405 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. §924(c) | Use of a Firearm during a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Caleb Porter, Task Force Officer - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 5-10-24

*Judge's signature*

City and state: Milwaukee, WI    Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A
# AN APPLICATION FOR A SEARCH WARRANT

I, Caleb Porter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with the following cellular phone number 312-964-0343 (hereinafter "Target Account"). The information is stored at premises controlled by AT&T ("PROVIDER"), a wireless telephone service provider headquartered at North Palm Beach, Florida. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Task Force Officer with the Federal Bureau of Investigation (FBI) and have been since October 2020. I am also a Detective with the West Allis Police Department in the Criminal Investigations Bureau and have served in this capacity for over 10 years. I have been a sworn law enforcement officer for 20 years. I am currently assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including violent and threatening criminal matters defined under Title 18 of the United States Code. I have been trained in a variety of investigative matters to include bank robberies, armed carjackings, threatening communication, and Hobbs Act robberies. I have also been trained in a variety of legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I

have assisted in criminal investigations, participating in surveillance, searches, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why criminal actors typically conduct various aspects of their criminal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951(a), Hobbs Act robbery, and 18 U.S.C. §924(c), Use of a Firearm during a Crime of Violence, have been committed by known and unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## SUMMARY OF PROBABLE CAUSE

5. That on 12/05/22 at approximately 10:00 pm an armed robbery took place at the 7-Eleven convenience store located at 3301 N Oakland Ave, in the City and County of Milwaukee, State of Wisconsin. Members of the Milwaukee Police Department responded to the incident, and PO Jason Chadwick met with and interviewed the victims identified as AV1 (m/w, xx/xx/2003) and AV2 (m/b, xx/xx/2000). AV2 reported at approximately 10:00 pm three suspects armed with handguns entered the store and robbed him.

6. Minutes before the robbery, AV2 reported he was working the front register when an unknown black male subject entered the store while AV2 was making a money drop in the store safe. AV2 stated this unknown black male eventually made a store purchase, which investigators later determined was an orange flavored Fanta soda. AV2 stated this unknown black male subject

2

inquired about the type of safe the store used and where he could purchase one, because this party alleged that they also owned a store. AV2 stated this unknown black male subject left the store after making his purchase.

7. AV2 stated that his co-worker stayed at the register and he went to the cooler to re-stock it. AV2 stated that he was in the cooler when he heard a deep voice yell, "Don't Move!" AV2 stepped out of the cooler to see what was happening and observed an unknown black male suspect coming at him stating, "open the safe!" AV2 described **SUSPECT#1 as being a black male, 5'10"-5'11", 170 LBS, heavy build, wearing a gray in color hooded sweat shirt with the hood up, a black full face mask that only allowed the eyes and the top of the nose to be seen, armed with a black handgun that he believed was a Glock.** SUSPECT#1 was later identified as being a WILLIAMS, Jerome D., D.O.B XX-XX-1994, who was arrested following a vehicle pursuit wearing the same gray hooded sweat shirt, jeans and shoes as seen in the surveillance video from 7-Eleven. The gray hooded sweat shirt had a design on the front, which was depicted in the 7-Eleven video footage and matches what WILLIAMS was wearing when he was arrested.

8. AV2 informed WILLIAMS that he could not open the safe. AV2 stated that he did not try to cooperate with WILLIAMS demands, which made WILLIAMS mad. WILLIAMS then struck him in the face with the black handgun, which broke his Ray-Ban prescription eye-glasses and caused a laceration to AV2's face. AV2 stated that WILLIAMS ordered him to go behind the register and forcibly dragged him behind the register. AV2 stated that WILLIAMS knocked him to the ground and struck him again with the black handgun.

9. WILLIAMS handed AV2 a plastic garbage bag and made a demand to fill up the garbage bag with cigarettes. AV2 stated that the plastic garbage bag was not the stores' and that WILLIAMS must have had it on his person prior to arriving to the store. AV2 stated that he filled

3

the plastic garbage bag with 4-5 boxes of Swisher Sweet Cigarillos, which contain 15 individual packages and are valued at $30.00 per box. AV2 stated that he filled the plastic garbage with several boxes of Newport Lights and Newport Light 100 cigarettes, which are valued at $10.54 per pack. AV2 stated that WILLIAMS took the garbage bag filled with the cigarettes and cigars.

10. AV2 stated that he observed another black male suspect behind the register grabbing money from it. AV2 described Suspect #2 as being a black male, 5'09", slim build 120 lbs, wearing all black clothing, a black full face mask, armed with a handgun. AV2 stated that he observed Suspect #2 breaking the store telephones.

11. AV2 stated that he also observed a third black male suspect, who was standing by the store entrance door. AV2 described Suspect#3 as being a black male, 5'07"-5'08", 120 lbs., slim build, wearing all black clothing, a mask, and armed with a handgun. Suspect#3 was later identified as TATE, Dontrell B/M XX-XX-1990.

12. AV2 stated that he observed **Suspect#2** leave from behind the register, then WILLIAMS followed behind **Suspect#2,** who both followed Suspect#3 out of the store. AV2 stated that he observed **WILLIAMS, Suspect#2, and TATE** go on foot west bound on East Hartford Ave., eventually going out of his sight.

13. Suspect #2 took $142.00 from the register till along with a security GPS tracking device. The device assisted in the investigation by locating the suspect vehicle. Officers were able to locate a Gray, Nissan Altima in the 4300 block of West Lisbon Ave. The officer's activated their emergency lights and sirens to conduct a traffic stop regarding the armed robbery however the vehicle fled at a high rate of speed. The operator was identified as WILLIAMS and the front right passenger was identified as TATE. WILLIAMS operated in a manner of utter disregard for human safety while fleeing and reached speeds in excess of 100 miles per hour on the city streets

of Milwaukee. The pursuit lasted for approximately four miles at which point the vehicle became disabled at 2711 West Garfield Avenue. WILLIAMS and TATE immediately fled from the vehicle on foot and were apprehended shortly thereafter, and disregarded the commands to stop from the officers. A third and fourth unknown suspect also fled on foot but eluded capture.

14. Affiant is aware that three firearms were recovered in the flight path of the suspects, and a fourth firearm was recovered from TATE, a Springfield XD chambered in .40 caliber. Two of the other firearms recovered, a Glock 19 with extended magazine and a Kahr CT45 with a silver slide, match the firearms used by WILLIAMS and Suspect #3, respectively.

15. Affiant is aware that the suspect vehicle, a gray/silver 2023 Nissan Altima with VIN: 1N4BL4BV2PN318897 and Michigan registration plate EPT9934 is owned by Hertz. DA Investigator Strasser, who works with Affiant on the MAVCTF, contacted Loss Prevention for Hertz and learned the vehicle was rented on 12/05/22 out of Indiana by WILLIAMS.

16. The vehicle was searched on scene and numerous pieces of evidence were recovered, including three cell phones. All three cellphones were determined to be iPhones. Two of the iPhones were located on the driver's floorboard and later inventoried under property numbers 22044481 and 22044483. A third iPhone with a cracked screen was found on the rear passenger seat. This phone was inventoried under property number 22044479.

17. Some additional evidence located in the vehicle was a partially drank orange Fanta soda, which matched what the black male subject who inquired about the store's safe purchased just prior to the robbery. In the trunk of the vehicle, a backpack was located and found to contain an Illinois birth certificate and Social Security Card for Shaprio Vetaw (m/b, XX/XX/1991)

18. Affiant reviewed security footage from the robbery as well as squad camera footage from the pursuit. Affiant is confident that the black male subject who inquired about the safe and

5

purchased the orange Fanta soda before the incident is the fourth occupant of the suspect vehicle and was observed fleeing on foot from the vehicle at the end of the pursuit. The cellphone recovered in the back seat of the Altima (referenced in paragraph 16) was determined to have phone number 262-393-9276. DA Investigator Strasser, also a member of the Task Force, located calls for service through MPD where this phone number was associated with Darnell J. Gurley (m/b, XX/XX/1988). Investigator Strasser located a Facebook page for Gurley (Bugatti Too Hood) and found photos that show Gurley wearing the same Nike sweatshirt and similar jeans as seen in the 7-Eleven video footage. There were also images showing Gurley wearing the same watch and armed with the same model Smith & Wesson pistol that was found abandoned along his flight path. Comparisons were done with images from Gurley's Facebook page, MPD booking photos and the 7-Eleven footage, and they are of the same person, Darnell J. Gurley (m/b, XX/XX/1988).

19. Affiant noted similarities with MO between the 7-Eleven robbery and two other unsolved robberies that occurred on 01/30/22. By this, Affiant is referring to the general physical appearance of the suspects, the fact that three persons entered to commit the actual robbery, the take-over style of the robberies and that in each of the incidents two of the suspects overtake the employee to gain money while a third suspect watches the door.

20. The first incident on 01/30/22 occurred at approximately 6:20 pm at the Family Dollar, located at 6000 W Silver Spring Drive in the County and City of Milwaukee. During the Family Dollar robbery, three black males entered the store armed with handguns. One of the suspects stayed by the door while two others went behind the counter. The assistant store manager, AV3, was grabbed by the suspects, who demanded money and that she open the safe. During this

6

robbery, one of the suspects fired a round from a pistol. Officers later recovered a .40 caliber casing from the scene.

21. Affiant is aware that MPD performed a NIBN (National Integrated Ballistic Information Network) comparison on the recovered .40 caliber casing as well as the Springfield XD pistol that was recovered from TATE after the 7-Eleven robbery. They found that the Springfield pistol recovered after the 7-Eleven robbery in December 2022 was the same pistol that fired the shot during the Family Dollar robbery in January 2022.

22. Suspect 1 in this incident was a heavy-set black male wearing a white hooded sweatshirt with the word "Drip" on the front and back, black jeans and black and white Nike shoes. He was armed with what appeared to be a black Glock handgun with an extended magazine. Suspects 2 and 3 were skinny black males wearing all dark clothing. Suspect 2 was armed with a black handgun with an extended magazine. The suspects stole $327 and fled the store in a dark sedan.

23. On 01/30/22 at about 7:42 pm, the same suspects from the Family Dollar robbery in Milwaukee robbed a BP Gas station, located at 7920 W National Ave in the City of West Allis and County of Milwaukee.

24. Suspect 1 and Suspect 2 forced their way to the employee area behind the register and held the victim, AV4, at gunpoint while taking money from the register. Suspect 1 then grabbed AV4 and shoved him roughly to another area of the back room and demanded more money. AV4 opened a metal file cabinet that contained additional money, which both suspects took. Suspect 3 was by the door as a lookout as in the other robberies. Before leaving, Suspect 2 grabbed AV4's cell phone and threw it across the store. All parties fled the scene in a dark colored Chrysler 200 sedan. AV4 reported that $23,840.00 was stolen by the suspects during this incident

25. This vehicle was later recovered on 02/03/2022 and was determined to have an Illinois registration plate of Q896410, which was reported stolen from Calumet Park, IL. I made contact with the registered owner who stated the theft was caught on his landlord's security video. The owner sent me a copy of the video, which showed a heavy-set male party wearing the same shoes as Suspect 1 from the January robberies get into the running vehicle. These shoes also resemble the shoes that WILLIAMS wore during the 7-Eleven robbery.

26. Affiant conducted interviews with a confidential source, CS1, who identified TATE and VETAW as the other actors in the 7-Eleven Robbery. CS1 indicated that a 4th person went into the store beforehand to check it out and made inquiries about a safe. This person was later identified as GURLEY.

27. CS1 also identified himself in the robberies from 01/30/22 and admitted to stealing the Chrysler sedan from Illinois two days beforehand. CS1 indicated that TATE was with him during these robberies as well as a third person whom CS1 initially identified as "Melo" who had phone number 312-964-0343. CS1 later looked at an Illinois booking photo of Rumeal D. Campbell (m/b, XX/XX/1991) and positively identified this person as "Melo." CS1 also disclosed that CAMPBELL was the person that fired a shot during the Family Dollar robbery while using TATE's .40 caliber Springfield pistol.

28. During a search of WILLIAMS' phone, Affiant located text messages between WILLIAMS and the contact "Melo" who had two different phone numbers, one of which was 312-964-0343. Affiant is also aware that in TATE's cell phone records, he was in communication with Campbell (Melo) at this number.

8

29. Affiant is aware that on 11/01/23, CS1 made a controlled phone call to CAMPBEL's phone, 312-964-0343. During the call, CAMPBELL alluded to firing the shot during the Family Dollar robbery.

30. Therefore, based on Target Account 1 being identified as associated with Rumeal CAMPBELL, and having information indicating he was involved with two Hobbs Act robberies on 01/30/22, I submit that there is probable cause to obtain historical records, which could be used to show location information on the date of the robberies.

31. It is common for cell phones to be used in robbery incidents, often between co-actors or to otherwise assist in the facilitation of the crime(s). In this instance, there are multiple different locations separated by sufficient time and distance that can be associated with the suspects in the above-described incidents. If common phone numbers can be developed between multiple incidents, this could lead to the identification of one or more of the suspects.

32. Based on my training and experience, individuals carry their cellular phones on their person or in a very close proximity. Further, most individuals have their own cellular phones during the commission of crimes, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

33. Based on my training and experience, I believe that there is probable cause to believe that historical call detail records for Target Account 1, for the period from **December 1st, 2021, through March 1st, 2022,** are relevant and material to the ongoing investigation. Among other things, law enforcement officers can use historical call detail records to analyze the past use of Target Account 1 and thereby obtain information about the subjects' co-conspirators, associates, and activities, as well as patterns of behavior. In particular, information about the past use of Target Account 1 is likely to enable the government, by matching call details with the cell site information

discussed below, to determine CAMPBELL's whereabouts or his possible contact with others, including other suspects, leading up to, and following, the Subject Offenses.

34. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

35. Based on my training and experience, I know that AT&T can collect cell-site data about Target Account 1. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the

10

Case 2:24-mj-00405-SCD   Filed 05/10/24   Page 16 of 20   Document 1

subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Account's user or users and may assist in the identification of co-conspirators and/or victims.

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned phone number 312-964-0343 ("Target Account 1") that are stored at premises controlled by AT&T ("the Provider"), headquartered at North Palm Beach, Florida.

# ATTACHMENT B

## Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the time period **December 1st, 2021, through March 1st, 2022:**

    a. The following subscriber and extended subscriber information about the customers or subscribers of the Accounts:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

       viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

       i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

       ii. information regarding the cell towers and sectors through which the communications were sent and received; and

       iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1951(a) and 924(c), involving known and unknown persons during the period **December 1st, 2021, through March 1st, 2022.**

14